IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

SHOY L. MOHR,                                        CV 05-1888-MA

          Plaintiff,                          OPINION AND ORDER

    v.

Commissioner of Social Security,

         Defendant.

**RICHARD A. SLY**
1001 SW 5TH Avenue, Suite 310
Portland, OR  97204
(503) 224-0436

     Attorney for Plaintiff

**KARIN J. IMMERGUT**
United States Attorney
**NEIL J. EVANS**
Assistant United States Attorney
1000 S.W. Third Avenue, Suite 600
Portland, OR  97204-2902
(503) 727-1053

**TERRYE E. SHEA**
Special Assistant United States Attorney
Social Security Administration
701 5th Avenue, Suite 2900 M/S 901
Seattle, WA  98104-7075
(206) 615-2143

     Attorneys for Defendant

**MARSH, Judge:**

1- OPINION AND ORDER

## INTRODUCTION

Plaintiff Shoy L. Mohr (Mohr) seeks judicial review of a final decision of the Commissioner of Social Security denying her application for disability insurance benefits under Title II of the Social Security Act[1].  42 U.S.C. §§ 401-33.  This Court has jurisdiction under 42 U.S.C. § 405(g).

Mohr moves this Court to remand her case for an immediate calculation of benefits.  The Commissioner maintains that her decision is based on substantial evidence and should be affirmed.

After a thorough and careful review of the record, the Commissioner's decision is AFFIRMED.

## BACKGROUND

Mohr applied for disability on December 30, 2002, alleging an amended onset date of November 5, 2002, due to anxiety disorder, bi-polar II disorder, depression, fibromyalgia, lower back injury, temporo-mandibular joint (TMJ), gastroesophageal reflux disease (GERD), chronic fatigue, hand tremor and side-effects of medications.  She was 37 years old when she applied for disability.  She has a high school education and past work as a grocery store courtesy clerk, secretary, emergency medical

---

[1] In her opening brief, Mohr states that the Commissioner also denied her claim for supplemental security income (SSI) under Title XVI of the Social Security Act.  While the record indicates that Mohr initiated an application for SSI, the Commissioner's final decision at issue in this case does not deal with the SSI application.

technician, newspaper writer/photographer, and as a circuit board
assembler.

Following a hearing on May 26, 2005, before an
Administrative Law Judge (ALJ), at which Mohr was represented by
counsel, the ALJ issued a written decision on June 7, 2005,
finding Mohr could perform a significant number of jobs in the
national economy, and therefore that she was not disabled at any
time through the date of his decision.

## STANDARD OF REVIEW

The initial burden of proof rests on the claimant to
establish disability.  Roberts v. Shalala, 66 F.3d 179, 182 (9th
Cir. 1995).  To meet this burden, a claimant must demonstrate an
"inability to engage in any substantial gainful activity by
reason of any medically determinable physical or mental
impairment which can be expected . . . to last for a continuous
period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).
The Commissioner bears the burden of developing the record.
DeLorme v. Sullivan, 924 F.2d 841, 849 (9th Cir. 1991).

The district court must affirm the Commissioner's decision
if the Commissioner applied proper legal standards and the
findings are supported by substantial evidence in the record.  42
U.S.C. § 405(g); Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir.
1995).  "Substantial evidence means more than a mere scintilla
but less than a preponderance; it is such relevant evidence as a

reasonable mind might accept as adequate to support a conclusion." Id.

The court must weigh all the evidence, whether it supports or detracts from the Commissioner's decision. Martinez v. Heckler, 807 F.2d 771, 772 (9th Cir. 1986). The Commissioner's decision must be upheld, even if the evidence is susceptible to more than one rational interpretation. Andrews, 53 F.3d at 1039-40. If the evidence supports the Commissioner's conclusion, the Commissioner must be affirmed; "the court may not substitute its judgment for that of the Commissioner." Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001).

## DISABILITY ANALYSIS

The Commissioner has established a five-step sequential process for determining whether a person is disabled. Bowen v. Yuckert, 482 U.S. 137, 140 (1987); 20 C.F.R. § 404.1520. The claimant bears the burden of proof at steps one through four. See Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999). Each step is potentially dispositive.

Here, at step one, the ALJ found that Mohr had not engaged in substantial gainful activity since her alleged disability onset date. See 20 C.F.R. § 404.1520(b).

At step two, the ALJ found that Mohr had "severe" lumbar spondylolisthesis, fibromyalgia, and bipolar disorder, and that

4- OPINION AND ORDER

the side-effects of her medications also constituted a "severe" impairment, as defined by 20 C.F.R. § 404.1520(c).

At step three, the ALJ found Mohr's impairments did not meet or equal the requirements of a listed impairment.  See 20 C.F.R. § 404.1520(a)(4)(iii), 404.1520(d).

The ALJ determined that Mohr had the residual functional capacity to perform a significant range of light exertional level, non-complex work, requiring no interaction with the general public.  The ALJ determined that Mohr was also limited to occasional balancing, stooping, kneeling, crouching, crawling, and use of ladders, ropes or scaffolds, and that she should avoid concentrated exposure to hazardous conditions.  See 20 C.F.R. §§ 404.1520(e), 404.1545; see also Social Security Ruling (SSR) 96-8p.

At step four, the ALJ found Mohr did not remain capable of performing her past relevant work.  See 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1520(f).

At step five, the ALJ found Mohr retained the ability to perform other jobs existing in significant numbers in the national economy, such as companion, file clerk, and general office clerk.  See 20 C.F.R. §§ 404.1520(a)(4)(v), 404.1520(g).

## DISCUSSION

On appeal to this court Mohr alleges the ALJ erred by: (1) rejecting the opinions of her treating and examining physicians;

(2) performing an inadequate analysis of severity at step 2; (3) incompletely analyzing whether her impairments equaled a listing at step 3; (4) improperly assessing her residual functional capacity; (5) improperly rejecting her testimony; and, (6) improperly rejecting lay witness testimony.  I shall address each claim in the order these issues are considered under the sequential evaluation.

I.   **The ALJ's reasons for rejecting Mohr's testimony were clear and convincing, and based on substantial evidence.**

Mohr alleges the ALJ's reasons for discrediting her were not clear and convincing.  The Commissioner avers that they were.

The ALJ is required to consider a claimant's testimony regarding subjective symptoms, such as pain or depression.  20 C.F.R. § 404.1529.  However, the ALJ is not required to automatically credit the claimant's allegations, or disability benefits would be available on demand.  See Fair v. Bowen, 885 F.2d 597, 603 (9th Cir. 1989).  Rather, once the claimant has produced objective medical evidence of an impairment that could reasonably be expected to produce some degree of the symptoms alleged, assuming there is no evidence of malingering, the ALJ can only reject a claimant's testimony for clear and convincing reasons, supported by substantial record evidence.  See Smolen v. Chater, 80 F.3d 1273, 1284 (9th Cir. 1996); see also Morgan v. Apfel, 169 F.3d 595, 599 (9th Cir. 1999).

6- OPINION AND ORDER

Examples of clear and convincing reasons include: (1) a claimant's reputation for dishonesty, prior inconsistent statements concerning her symptoms, and other testimony by the claimant that appears to be less than candid; (2) unexpected or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; (3) medical evidence tending to discount the severity of the claimant's subjective claims; and (4) inconsistency between the claimant's daily activities and the degree of disability she alleges. See Rollins v. Massanari, 261 F.3d 853, 856-57 (9th Cir. 2001).

Here, the ALJ stated that he found Mohr's testimony was not "sufficiently credible to serve as additive [sic] evidence to support a finding of disability," for several of the above listed reasons. To put the ALJ's findings in context, I note that Mohr claimed she sleeps most of the day due to depression and anxiety, and the side-effects of medication, and that when she is awake she is angry, forgetful, has trouble concentrating, is anxious around crowds, has to walk with a cane, has difficulty using her hands, is a dangerous driver, and is only able to tend to her personal hygiene and grooming once a week.

One reason the ALJ cited for discrediting Mohr was that her subjective symptoms were "only partially supported by the medical record." He explained that "some of her alleged impairments are

not medically determinable or not severe within the ambit of the Regulations."  It can be inferred that the ALJ did not find objective medical support for Mohr's claimed depression, anxiety and chronic fatigue, based on his finding, at step two, that Mohr suffered from "severe" lumbar spondylolisthesis, fibromyalgia, bipolar disorder, and medication side-effects, and that TMJ, hand tremors and GERD were "medically determinable," though not severe.  Based on my review of the medical evidence, discussed in greater detail below, I find substantial evidence to support this reason.

Next, the ALJ stated that the degree of disability alleged by Mohr, even from her "severe" impairments, was disproportionate to the objective medical evidence.  The ALJ found Mohr's treating physicians seemed to "uncritically accept as true" most of her subjective symptoms, and did not support their opinions with medically acceptable clinical or laboratory diagnostic techniques.  See 20 C.F.R. §§ 404.1508.  As discussed in greater detail below, I find substantial evidence to support this reason.

Third, though the ALJ did not expressly state that Mohr was an inconsistent historian, he pointed to examples of her inconsistent reporting as reasons to reject her testimony.  He noted that Mohr worked four hours a day, four days a week, for almost a year, after her alleged onset of disability, and that

she continued to help her husband clean a bank until November
2004.

The ALJ also expressed concern, at the hearing, that the
initial date Mohr alleged her disability began– May 2002–
corresponded with the loss of her full-time job, not a change in
her medical condition.  The ALJ observed that Mohr collected
unemployment benefits[2] after being terminated from her part-time
job, until approximately April 2005.  Mohr's reports to Dr.
Chambers lend credence to the ALJ's concerns about secondary gain
motivation.  One chart note states, "[Mohr] is still applying for
disability; her unemployment is going to run out soon, so she is
worried a bit about finances."

The ALJ also found Mohr's annual trips to church
conventions, after her alleged onset of disability, indicated
that Mohr was not as limited as she claimed to be.

Finally, the ALJ found Mohr's activities of daily living
(ADL) were either inaccurately reported, or her limited activity
level was not attributable to her medical condition.  The ALJ
found evidence in the record indicating that, contrary to some of
Mohr's testimony at the hearing, since her alleged onset of

---

[2] Receipt of unemployment benefits requires a claimant to
represent that she is willing and able to work, which is clearly
inconsistent with a disability claimant's posture that she is
unable to work.

disability, Mohr had engaged in beadwork, rode motorcycles, used the computer for research, took care of her cats and fish, and spent time at the library reading.  I reasonably infer from the transcript of the hearing that the ALJ considered Mohr's self-prescribed use of a cane representative of an activity not attributable to her medical condition.  See Magallanes v. Bowen, 881 F. 2d 747, 755 (9th Cir. 1989)(stating the court may draw specific and legitimate inferences from the ALJ's decision).

Mohr contends the fact she was terminated from the part-time job she performed after her alleged onset of disability actually substantiates her claim that she was unable to work due to the progression of her "disease."  However, substantial evidence in the record supports the ALJ's finding to the contrary.  For instance, Mohr reported to Elizabeth Chambers, M.D., that she was fired because the car dealership she worked for decided to hire a family member, not because her medical condition deteriorated. While Mohr's testified at the hearing that she was terminated because she made too many mistakes, she reported to Dr. Chambers that "it was nothing that she did, and she can get references, however she takes it quiet personally."

Mohr also contends that her part-time work does not show that she is capable of sustaining work activity 8 hours a day, 5 days a week.  This argument misses the mark because the ALJ can

properly conclude that a claimant's activities are inconsistent with the degree of impairment she alleges without necessarily commenting on her ability to sustain full-time work activity.

Mohr further argues that the ALJ's findings regarding her activities were not based on evidence in the record, and that her activities were not inconsistent with disability.  Yet, as previously discussed, there is ample evidence that Mohr continued to work at part-time jobs well after her alleged onset of disability, and to collect unemployment when she was not working. The record also contains substantial evidence that Mohr regularly attended church functions and annual church conventions.  Mohr argues that "she must attend the yearly convention of her church," and that the experience is very stressful for her. Nevertheless, the ALJ could properly find that Mohr's ability to do so was inconsistent with her contention that she cannot be around people.

I also find substantial evidence in the record to support the ALJ's finding that Mohr's computer use was inconsistent with her alleged limitations.  The record indicates she used the computer to prepare paperwork for her unemployment claim, to shop on eBay, and to write letters to her doctors, not just for fibromyalgia research.

11- OPINION AND ORDER

Finally, Mohr contends she "sold her motorcycle after an accident because she could no longer ride."  Yet, Dr. Chambers' chart notes indicate the motorcycles were sold for financial reasons.  One states, "Her husband is pushing her to get work, stating they might have to sell their motorcycles if something does not change."  Another states that Mohr loses her temper with her husband "when he makes comments about her needing to sell her motorcycle for funds."  Thus, the ALJ's finding with respect to the motorcycle was based on substantial evidence.

In summary, I am not persuaded by Mohr's allegations of error in the credibility assessment because I find the ALJ's reasons for rejecting her testimony were clear and convincing, and supported by substantial evidence.

## II.  The ALJ's evaluation of lay witness testimony was legally sufficient.

According to Mohr, the ALJ erred by failing to credit her husband, Butch Mohr's, testimony.  She claims the ALJ applied the wrong standard by rejecting Mr. Mohr's testimony based on his lack of medical expertise, and that his observations "verified [Mohr's] limited number of daily activities and substantiated her treating doctor's opinions...".

Mr. Mohr testified that: he does almost all the housework; he has to call Mohr everyday to remind her to take her medication because her memory "is shot"; she is generally dizzy, exhausted,

12- OPINION AND ORDER

in pain and has difficulty standing; she attends some Johovah's
Witness meetings; she experiences anxiety attacks that cause her
chest pain; and finally, that she sometimes thinks about hurting
herself.

The standard for rejecting lay witness testimony is not as
specific or demanding as that for rejecting the claimant's own
testimony.  The ALJ is required to account for competent lay
witness testimony, and if he rejects it, to provide germane
reasons for doing so.  Lewis v. Apfel, 236 F.3d 503, 511 (9th
Cir. 2001).

Lay witness testimony as to a claimant's symptoms or how an
impairment affects his ability to work is competent evidence
which the ALJ must take into account.  See Nguyen v. Chater, 100
F.3d 1462, 1467 (9th Cir. 1996)(finding the ALJ erred by failing
to account for lay witness testimony about a claimant's serious
coughing spells); see also Dodrill v. Shalala, 12 F.3d 915, 919
(9th Cir. 1993).  However, testimony about the causes of a
claimant's medical problems is beyond the competence of a lay
witness and therefore does not constitute competent evidence.
Vincent v. Heckler, 739 F.2d 1393, 1394-95 (9th Cir. 1984); cf.
Nguyen,100 F.3d at 1467 (distinguishing lay witness testimony
about a claimant's symptoms from testimony involving medical
conclusions or diagnoses).

Here, the ALJ generally credited Mr. Mohr's observations about "the behaviors [Mohr] demonstrates."  However, the ALJ found his statements about Mohr's chest pain, nausea and sedation were "of limited value in determining how [Mohr's] impairments affect her overall ability to perform basic work activities." This was so, according to the ALJ, because Mr. Mohr lacked medical expertise, and because these statements were "not well supported by the medical evidence," and were "inconsistent with other substantial evidence in the case record."

Mr. Mohr's statements regarding the causes of her alleged anxiety attacks and chest pain were, indeed, outside the realm of competent lay witness testimony.  Thus, the ALJ was not required to comment on them.  Further, I find inconsistency with medical and other record evidence to be a germane reason to reject the balance of Mr. Mohr's testimony.  I also find substantial evidence to support this reasoning, based on the evidence already discussed, and on Mohr's reports to Dr. Chambers that Mr. Mohr consistently encouraged, if not admonished, Mohr to seek employment during the period under review.

There isn't any merit to Mohr's contention that the ALJ's treatment of Mr. Mohr's testimony violates the Ninth Circuit's recent ruling in Stout v. Commissioner, 454 F.3d 1050 (9th Cir. 2006).  Stout prohibits this court from holding harmless an ALJ's

silent disregard of lay testimony "unless it can confidently conclude that no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination." Id. at 1056. Stout has no application in this case, where the ALJ gave germane reasons for discrediting Mr. Mohr's testimony.

### III. The ALJ's evaluation of the medical evidence is supported by substantial evidence and free of legal error.

Mohr alleges that the ALJ erred by rejecting all of her treating physicians' opinions. She argues that the ALJ's reasons for doing so "fail to meet the legal standard as set forth in Lester." See Lester v. Chater, 81 F.3d 821, 830-31 (9th Cir. 1995)(ALJ may reject the testimony of an examining, nontreating physician, in favor of a nonexamining, nontreating physician when he gives specific, legitimate reasons, supported by substantial record evidence). The Commissioner avers that the ALJ gave legally sufficient reasons for rejecting each physician's opinion, as discussed below.

The standards employed by the Commissioner when evaluating medical evidence in disability cases are found at 20 C.F.R. § 404.1527(d). The Commissioner weighs the opinion of a treating physician by considering the following factors: (1) the length of the treatment relationship and the frequency of examination, (2) the nature and extent of the treatment relationship, (3) the

degree of supporting explanations and evidence, (4) consistency with the record as a whole, (5) whether the physician specializes in the medical issue about which he opines, and (6) other evidence such as whether the physician is familiar with the claimant's case record and the social security regulations.  Id.; see also Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir.2001)("when evaluating conflicting medical opinions, an ALJ need not accept the opinion of a doctor if that opinion is brief, conclusory, and inadequately supported by clinical findings").

The Commissioner evaluates the opinion of a nontreating, examining physician and/or psychologist based on (1) medical specialty and expertise with the Social Security rules, (2) supporting evidence in the case record, (3) supporting explanations provided by the physician or psychologist, and (4) any other relevant factors.  20 C.F.R. § 404.1527(f).

To reject the uncontroverted opinion of a treating physician, the ALJ must present clear and convincing reasons for doing so.  Rodriguez v. Bowen, 876 F.2d 759, 761-62 (9th Cir. 1989).  To reject the opinion of a treating physician that conflicts with another physician's opinion contained in the record, the ALJ must give specific and legitimate reasons based on substantial evidence.  Winans v. Bowen, 853 F.2d 643, 647 (9th Cir. 1987).  Internal inconsistencies in a physician's own

opinion, or between his opinion and his treatment notes, may constitute additional ground for rejection.  See Bayliss v. Barnhart, 427 F.3d 1211, 1216 (9th Cir. 2005).

**A.    Elizabeth Chambers, M.D.**

Mohr argues that the ALJ failed to provide legally sufficient reasons for rejecting Dr. Chambers' opinion that Mohr is incapable of maintaining full-time work.

The record contains four opinions by Dr. Chambers regarding Mohr's functionality.  The ALJ summarized each opinion as follows: on January 28, 2002, Dr. Chambers assessed Mohr with a global assessment of functioning (GAF) score of 55, denoting a moderate impairment in social and occupational functioning; on February 11, 2003, Dr. Chambers opined that Mohr appeared to be able to obtain work, but that she needed to get her depression and anxiety under control in order to sustain work; on August 11, 2003, Dr. Chambers wrote that Mohr was "barely able" to perform part-time work, and opined that her current job, working 16-hours per week, independently, with no interaction with supervisors, co-workers, or the general public, doing very specific, low-stress tasks, was the most she could manage at the time; on July 30, 2004, Dr. Chambers opined that Mohr was unable to maintain regular employment at that time.

The ALJ found Dr. Chambers' opinions were entitled to "serious consideration," being that she was Mohr's treating

17- OPINION AND ORDER

physician for a period of years.  However, the ALJ found Dr.
Chambers' opinions were not entitled to controlling weight for
three principal reasons.

First, because she relied "quite heavily" on Mohr's
subjective reports and "seemed to uncritically accept as true
most, if not all, of what the claimant reported."

Second, because Dr. Chambers' use of the term "disability"
seemed to refer to "an inability to perform the claimant's past
work," which the ALJ also agreed Mohr could not do, but which
does not end the analysis under the regulations.  Notably, a
doctor's statement about a claimant's ability to work is not a
proper medical source opinion, but an administrative finding
reserved to the Commissioner, and is therefore not accorded much
weight.  See 20 C.F.R. §§ 404.1527(d)(2); SSR 96-5p.

Finally, and most critically, the ALJ found Dr. Chambers'
opinions were "not well supported by medically acceptable
clinical and/or laboratory diagnostic studies and are
inconsistent with other substantial evidence in the case record."

After a thorough review of Dr. Chambers' chart notes, I find
substantial evidence in the record supporting these specific and
legitimate reasons for discrediting Dr. Chambers statement that
Mohr was incapable of working as of July 30, 2004.

**B.    Steven Vogt, M.D.**

According to Mohr, the ALJ also erred by failing to provide legally sufficient reasons for discrediting Dr. Vogt's May 13, 2003, assessment that she could lift fifteen pounds occasionally, could sit for four hours per day and stand for three, and that she did not need a cane to ambulate.

The ALJ reviewed the records provided by Dr. Vogt, noting that he was Mohr's primary care physician for a time.  However, the ALJ found his opinions unpersuasive because they were not well supported by medically acceptable clinical or laboratory diagnostic techniques.  He also noted that Dr. Vogt inauspiciously observed that Mohr did not begin complaining of severe pain and fatigue until she was laid off from her full-time job.  These were specific and legitimate reasons for discrediting a treating physician's controverted opinion.

**C.    Daniel Sager, M.D.**

Mohr contends the ALJ should have credited Dr. Sager's opinion, expressed in a chart note dated March 21, 2003, that "it was hard to imagine [Mohr] working in even a sedentary capacity, given her current appearance."  Ten days later, on March 31, 2003, Dr. Sager noted that Mohr was using a cane, was less sedated than before, and wasn't in any distress.  He referred her back to Dr. Vogt and Dr. Chambers.

As the Commissioner points out, the ALJ incorrectly attributed these notes to Dr. Vogt, the referring doctor. However, he still gave a specific and legitimate reason for rejecting the "hard to imagine" statement.  The ALJ found that it was internally inconsistent with the doctor's notes from the next visit, after Mohr's appearance had improved.

Given the short treatment period, the fact that Dr. Sager's opinion was contradicted by other physicians in the record and unsupported by clinical and/or laboratory diagnostic studies, and that it took the form of an improper administrative finding reserved to the Commissioner, I find the ALJ's reason for rejecting Dr. Sager's unpersuasive opinion to be legally sufficient.

**D.   Lyanna Lindsey, Ph.D.**

Finally, Mohr contends the ALJ erred by rejecting Dr. Lindsey's October 6, 2003, finding that Mohr had a GAF score of 42.  Dr. Lindsey, a psychologist with Gorge Counseling & Treatment Services, performed a psychological evaluation of Mohr on October 6, 2003.  At the time, Mohr reported that she was working part-time, and that there were "some joys in her life" such as using the computer and beading.

The ALJ observed that a GAF of 42 "denotes a very serious impairment in social and occupational functioning," yet, Dr. Lindsey "did not note any gross psychopathology or report any

20- OPINION AND ORDER

significant functional limitations consistent with this finding."
See DSM-IV 30 (4th ed. 1994)(noting that someone with a GAF
between 41 and 50 might have suicidal ideation, severe
obsessional rituals, occupational panic attacks, no friends, or
be unable to keep a job).

I find this to be a specific and legitimate reason to reject
Dr. Lindsey's GAF assessment.  In any event, even if the ALJ had
credited this opinion, a GAF score cannot serve as a substitute
for the required objective medical evidence and work-related
functional assessments needed to establish disability under the
Social Security Act.

**IV.  The ALJ's step two finding is supported by substantial
     evidence and free from legal error.**

Mohr contends the ALJ erred by failing to find that her
alleged anxiety and depression were "severe" impairments, within
the meaning of the regulations.  According to the Commissioner,
while Mohr reported symptoms of anxiety and depression, her final
diagnosis was bipolar disorder II, which the ALJ found to be a
severe impairment.  The Commissioner avers that, in any event,
anxiety and depression did not cause functional limitations
beyond those the ALJ accounted for based on her bipolar disorder.

In order to prove an alleged impairment is "severe" a
disability claimant must show (I) that she suffers from a
"medically determinable physical or mental impairment," and (ii)
that the medically determinable impairment significantly limits

21- OPINION AND ORDER

her physical or mental ability to do basic work activities.  See 20 C.F.R. §§ 404.1504, 404.1520(c), 416.904, 416.920(c); see also Edlund, 253 F.3d at 1159-60.

To show a "medically determinable physical or mental impairment" the claimant must proffer "medical evidence consisting of signs, symptoms, and laboratory findings," not simply her own subjective statement of symptoms.  20 C.F.R. §§ 404.1508, 416.908.  If the claimant makes such a showing, she must also prove the impairment significantly limits her ability to: walk, stand, sit, lift, push, pull, reach, carry, handle, understand, carry out and remember simple instructions, use judgment, respond appropriately to supervisors, co-workers, and usual work situations, and/or deal with changes in a routine work setting.  20 C.F.R. §§ 404.1521, 416.921.  An impairment is not severe if it has no more than a minimal effect on the claimant's ability to do these types of activities.  See SSR 96-3p.

Mohr does not point to any evidence that anxiety and depression have any affect on her ability to do basic work-related activities.  Instead, she argues that the ALJ erred by failing to discuss Dr. Chambers' diagnosis of anxiety disorder on January 28, 2002- nine months before her amended alleged onset of disability- and a chart note written by Robert Baily, M.D. on February 14, 2003, which states in the assessment section, "depression, obesity."

22- OPINION AND ORDER

A medical diagnosis does not equate to "disability," as defined by the regulations. See Moncada v. Chater, 60 F.3d 521, 523 (9th Cir. 1995)(stating that the mere diagnosis of an element of a listed impairment, at step three of the sequential evaluation, is not sufficient proof of disability); see also Key v. Heckler, 754 F.2d 1545, 1549-50 (9th Cir. 1985). Thus, even if the ALJ had expressly credited anxiety disorder and depression as among Mohr's medically determinable impairments, he could not have found them to be "severe" impairments without evidence that they had more than a minimal effect on Mohr's ability to do work-related activities. Even in her reply brief Mohr still does not point to such evidence. Accordingly, I do not find any merit to Mohr's contention that the ALJ erred at step two of the sequential evaluation.

**V.    The ALJ's step three finding is supported by substantial evidence and free from legal error.**

According to Mohr, the ALJ failed to adequately consider whether her impairments equaled a Listed Impairment, considered so severe as to automatically constitute disability, without regard to any further consideration of claimant's age, education, and/or work experience. See 20 C.F.R. §§ 404.1520(a)(4)(iii), 404.1520(d); see also Young v. Sullivan, 911 F.2d 180, 183 (9th Cir. 1990).

The assessment of whether a claimant's impairments either meet or equal a listed impairment must be based on medical

23- OPINION AND ORDER

evidence.  See 20 C.F.R. §§ 404.1520(d), 416.1520(d).  A social security claimant bears the burden of proving her impairment(s) meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.  See Burch v. Barnhart, 400 F.3d 676, 683 (9th Cir. 2005).  "An ALJ is not required to discuss the combined effects of a claimant's impairments or compare them to any listing in an equivalency determination, unless the claimant presents evidence in an effort to establish equivalence."  Id. at 683.

In this case, the ALJ thoroughly considered whether Mohr's impairments met Listed Impairments 1.04, concerning disorders of the spine, and 12.04, concerning affective disorders.  He concluded that Mohr's back problems did not meet or equal the criteria for Listed Impairment 1.04 because she "failed to show [her back impairment] results in either the inability to ambulate effectively on a sustained basis or to perform fine and gross movements effectively on a sustained basis."  The ALJ further concluded that Mohr "failed to demonstrate the marked level of [mental] impairment" to show equivalency to Listed Impairment 12.04.  Finally, the ALJ stated that even considering her impairments in combination, including fibromyalgia and the side-effects of medication, Mohr could not show equivalence to a Listed Impairment.

Mohr argues the ALJ failed to "compare the evidence to [her] multiple impairments in the listing criteria."  While she charges the ALJ with making "bare assertion[s], without foundation or reference to specific medical records," she is herself guilty of this.  Absent a showing that she meets the criteria of a Listed Impairment not considered by the ALJ, I do not find any error in the ALJ's evaluation at step three.  Burch, 400 F.3d at 683.

**VI.  The ALJ's residual functional capacity assessment was based on substantial evidence.**

Mohr's final allegation of error is that the ALJ's assessment of her residual functional capacity (RFC) was legally insufficient.  The Commissioner avers that the ALJ properly accounted for the limitations found to be credible and supported by substantial evidence in the record.  I concur with the Commissioner.

A claimant's RFC is an assessment of what she can still do despite her limitations.  SSR 96-8p.  RFC is used at step four of the sequential evaluation to determine whether a claimant is able to do her past relevant work, and at step five to determine whether she is able to do other work, considering her age, education, and work experience.  The ALJ assesses a claimant's RFC by reviewing all relevant evidence in the record, including testimonial and medical source statements, to determine the extent to which her medically determinable impairment(s), including any related symptoms, such as pain, may cause physical

25- OPINION AND ORDER

or mental limitations or restrictions that may affect her capacity to do work.  Id.

In this case, the ALJ deferred to the Disability Determination Services (DDS) physicians who examined Mohr's record and concluded that the medical and testimonial evidence supported an RFC for light work with only occasional balancing, stooping, kneeling, crouching, crawling, use of ladders, ropes, scaffolds, and no concentrated exposure to hazardous conditions.

Mohr reiterates her argument that the ALJ erred by failing to credit the aforementioned physicians' opinions, showing she is "severely limited by her impairments," and "incapable of maintaining employment," and that she has a "very low level of functioning."

This argument lacks merit for two reasons.  First, the ALJ properly determined that these physicians' opinions were not reliable.  Second, the RFC assessment is expressed on an exertional level basis, and a function-by-function basis; generalized assertions about a claimant's ability to work are inapposite under this rubric.  Thus, the ALJ could not have simply incorporated these statements in the RFC assessment.

## **CONCLUSION**

Based on the foregoing, the Commissioner's decision is AFFIRMED and this case is DISMISSED.

IT IS SO ORDERED.

DATED this _7_ day of February, 2007.

> /s/  Malcolm F. Marsh
> Malcolm F. Marsh
> United States District Judge